[No. F017895. Fifth Dist. Aug. 31, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
FLOYD RAY GORE, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

693

## COUNSEL

Howard J. Specter, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Shirley Nelson and Suzanne M. Ambrose, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

## FRANSON, J.*—

### STATEMENT OF THE CASE AND THE FACTS

Defendant was convicted by jury of two counts of first degree murder. The jury found true the special circumstance of multiple murder. Defendant was also convicted of residential burglary. In addition, a firearm-use enhancement (Pen. Code, § 12022.5) was found true for each count. Defendant admitted the on-bail enhancement. (Pen. Code, § 12022.1.) Defendant was sentenced to life imprisonment without the possibility of parole. The court imposed the five-year upper term for the gun-use enhancement and a two-year on-bail enhancement.

Defendant appeals, claiming sentencing error and asserting his *Wheeler* motion (*People v. Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748]) was erroneously denied as untimely.

For the reasons to be explained in the unpublished portion of this opinion, we find sentencing error. In the published portion of the opinion we find that due to the unique nature of the jury selection process in this case the trial court erroneously limited defendant's *Wheeler* motion to challenges made during the selection of the alternate jurors, thereby foreclosing all consideration of the People's peremptory challenges to Hispanic prospective jurors removed during the selection of the panel of 12 jurors.

The facts are not pertinent to the issues raised and may be briefly summarized. On June 24, 1991, defendant shot and killed John Muir, Jr., and Kevin Bardin while they were asleep in their beds. Defendant was angry at both of them because he believed they had been sexually involved with his longtime girlfriend, Kendra Valpey.

### *The Jury Selection, Wheeler Motion and Contentions*

Because the People were seeking the death penalty, jury selection included individual voir dire of the prospective jurors. Each prospective juror was asked to fill out a hardship questionnaire and a 15-page informational questionnaire. The trial court and counsel questioned those jurors claiming a hardship. There were some excusals for hardship and some excusals based on a stipulation by the parties. The court then called in groups of 10

---

*Retired Presiding Justice of the Court of Appeal, Fifth District, sitting under assignment by the Chairperson of the Judicial Council.

prospective jurors at a time. The 10 were questioned as a group on general principles. Thereafter, each prospective juror was called in separately and voir dire was conducted by court and counsel. During this individual questioning, the main focus was on the prospective juror's views about the death penalty. At this time, counsel for defendant and the People also asked questions relating to answers given on the questionnaires. After each prospective juror was questioned, the prospective juror was either excused for cause, excused by stipulation of the parties, or told to report back at a certain time. This procedure was repeated with groups of 10 for several days.

The 90-some prospective jurors who remained after these procedures were completed were called back as a group. Twelve of the prospective jurors were randomly selected to sit in the jury box. No further questioning occurred. The People and defendant then alternated in making peremptory challenges to the prospective jurors seated in the box. During this procedure, the People exercised 18 peremptory challenges to the prospective jurors. Defendant exercised 14 peremptory challenges. During the selection procedure, the People peremptorily challenged the only four Hispanic jurors called to the jury box. This proceeding moved very quickly, and the jury was selected in a very short period of time. Both parties accepted the 12 jurors, and the panel was promptly sworn.

Immediately thereafter, four prospective jurors were randomly drawn to begin the selection of the four alternate jurors. Again, no questions were asked, and the People and defendant alternated in making peremptory challenges. The People's first three peremptory challenges were to the only three Hispanic prospective alternate jurors called to the jury box. At this time defendant made a *Wheeler* motion.[1]

Defendant contended the prosecution was systematically excluding Hispanic jurors. Defendant listed the seven Hispanic jurors who had been called to the box and pointed out that the People had peremptorily challenged each of them. Defendant explained that he had not had time to review each and every questionnaire of these jurors. Defendant stated that if the court wanted further reasons to establish a prima facie case he would need a few minutes.

The parties stipulated prospective alternate Juror Sara Johnson was Hispanic. The People had no comment on whether a prima facie case had been established. The trial court then ruled that as to the 12 jurors already seated

---

[1] *Wheeler, supra,* holds that if a party believes his opponent is using his peremptory challenges to strike jurors on the ground of group bias alone, he must "raise the point" in timely fashion and make a prima facie case of such discrimination to the satisfaction of the court. (22 Cal.3d at p. 280.) Here, defendant objected to the prosecution's use of peremptory challenges for a discriminatory purpose and demanded a mistrial.

and sworn, the *Wheeler* motion was untimely. The court elaborated: "Each of you passed and this jury was accepted before the motion was made and accordingly, I believe it to be untimely." The court, however, found that as to the prospective alternate jurors defendant had made a prima facie case that Hispanic jurors had been systematically excluded by the People. The court asked the prosecutor to state reasons for the three peremptory challenges to the Hispanic alternate jurors.

The People's reasons were:

"And we start with . . . Mr. Rosales, . . . And if the Court will recall during the death qualifications of . . . Miguel Rosales. He said that it would be difficult, due to his religious beliefs, to ever decide with death but he could—he stated, yes, I could do death under some special circumstances.

"It was the People's feeling that Mr. Rosales was reluctant towards the death penalty, and that was the primary reason for the exclusion or the exercising of a peremptory challenge under Mr. Rosales as alternate number two.

"If we go to Ms. Johnson, . . . on her questionnaire she stated that she felt that murder was appropriate for a large—the death penalty would be appropriate for a murder of a large number of people. That and other considerations, we felt that Ms. Johnson was, once again, reluctant to be involved in the death penalty unless it meant certain specific criteria that were not associated with this case.

"And I believe the last alternate to be considered was . . . Ms. Lisa Perez, . . . The primary cause for the People to exercise the challenge with Ms. Perez was that she identified herself as an unemployed dental assistant, single mother of two. We felt that she might not have the same general feelings and responses as the majority of the panel, and we also felt that she indicated that she had a cousin who was a defendant in a narcotics case. That was the primary reason, not on the penalty phase but as to the guilt phase, the People exercised the challenge against Ms. Perez, feeling that she demonstrated weakness as to the guilt phase.

"Those were the primary reasons and rationale to the three exercise[d] challenges to those three specific individuals."

Defendant argued that the prosecution's reasons were not valid, particularly as to Lisa Perez. Defendant acknowledged the court had ruled against him as to the 12 jurors already sworn but asked the court to consider the

prosecution's prior peremptory challenges in evaluating the 3 challenges now at issue.

The trial court responded:

"Well, I have to agree that it's hard for me not to take into consideration the fact that he did excuse a number of people with Hispanic surnames when we were picking the first twelve.

"I'm certainly satisfied, however, with the explanation with regard to . . . Mr. Rosales . . . , likewise with regard to Sara Johnson, particularly with regard to her criteria, personal criteria, that would have to be met before she could impose the death penalty. [¶] . . . I'm satisfied with the explanation with regard to her.

"With regard to Lisa Perez, that's a much closer case. I do not accept, I don't think the law accepts, as a reasonable basis for excusing her that she is unemployed and that she is a former dental hygienist or whatever it was exactly or the fact that she's a single mother of two. But given the fact that her cousin had been involved in a narcotics case and the concern then that the prosecution has with regard to the guilt phase, I do accept that particular explanation.

"I look at each explanation singly and I also look at them as a group as I compare them with one another. I've got two explanations that I feel are very strong, very, very valid, and the third one is a very close question, but I do find, under the circumstances, given the nature of the charges, that it is a reasonable basis and a neutral basis. It has nothing to do with the ethnic background of the person. For those reasons, the motion is respectfully denied."

During trial a regular juror was replaced by an alternate juror. The replacement juror was later excused and another alternate was seated on the jury.

Before the sentencing hearing, defendant filed a motion for new trial, claiming his *Wheeler* motion was erroneously denied. He asserted the trial court erred in denying the motion as to the main panel as untimely; he also asserted the trial court should have considered all the challenged Hispanic jurors in deciding whether the prosecution had met its burden of proving a nondiscriminatory purpose in excluding the alternate Hispanic jurors. The trial court denied the motion without comment.

■ Defendant asserts on appeal the failure of the trial court to require explanations for the prosecutor's first four peremptory challenges of Hispanic prospective jurors violated his right to a representative jury. Defendant

contends the rule that a *Wheeler* motion is untimely once the jury is sworn has no application to what occurred here. Particularly, defendant argues it is entirely reasonable to conclude the pattern of systematic exclusion that occurred did not become apparent until the selection of alternate jurors had commenced. Thus, by ignoring the first four peremptory challenges of jurors, the trial court ignored the first half of the prosecution's pattern of discriminatory exclusion. Defendant asserts the court's ruling of untimeliness penalized him because the pattern was not apparent until the selection of alternates commenced, and the proceedings are therefore clouded by a question whether he was afforded his right to a representative jury under circumstances which strongly suggest this right may have been violated.

Respondent makes a cursory response, contending that once the jury is sworn the motion is always untimely. Respondent fails to discuss the unique procedural aspects of this case upon which we find the issue turns.[2]

### DISCUSSION

### I.

### *The Wheeler Motion*

■ "[T]he Constitution forbids all forms of purposeful racial discrimination in selection of jurors." (*Batson* v. *Kentucky* (1986) 476 U.S. 79, 88 [90 L.Ed.2d 69, 81-82, 106 S.Ct. 1712], fn. omitted.) A defendant has the right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria. "Purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." (*Id.* at p. 86 [90 L.Ed.2d at pp. 80-81].) When systematic exclusion occurs, the defendant is harmed, the excluded jurors are harmed, and the community is harmed because the public confidence in the fairness of our system of justice is undermined. (*Id.* at p. 87 [90 L.Ed.2d at p. 81].)

■ In California, the principles applicable to systematic exclusion of jurors were first articulated in the California Supreme Court case of *People* v. *Wheeler, supra,* 22 Cal.3d 258. "A party may not use peremptory challenges to remove prospective jurors solely on the basis of group bias. Group

---

[2]In his reply brief defendant distinguishes cases where the *Wheeler* challenges were ruled untimely from the procedures utilized in this case. In both *People* v. *McGhee* (1987) 193 Cal.App.3d 1333 [239 Cal.Rptr. 28] and *People* v. *Dominick* (1986) 182 Cal.App.3d 1174 [227 Cal.Rptr. 849], the defendant made a *Wheeler* motion after the jury was sworn but before the selection of alternates was complete. Neither case decided whether the *Wheeler* motion was timely as to the already sworn jurors.

bias is a presumption that jurors are biased merely because they are members of an identifiable group distinguished on racial, religious, ethnic, or similar grounds." (*People* v. *Fuentes* (1991) 54 Cal.3d 707, 713 [286 Cal.Rptr. 792, 818 P.2d 75].) A defendant need not be a member of the challenged group to challenge its exclusion. (*Id.* at p. 714.)[3] "If a party believes an opponent is improperly using peremptory challenges for a discriminatory purpose, that party must make a timely objection and a prima facie showing that the jurors are being excluded on the basis of group bias. [Citation.] To establish a prima facie case, the moving party should first make as complete a record as possible; second, the moving party must establish that the persons excluded are members of a cognizable group; and third, the moving party must show a strong likelihood that the persons are being excluded because of group association. [Citations.] Once the moving party has established a prima facie case, the burden shifts to the other party to come forward with a race-neutral explanation related to the particular case to be tried. [Citations.]" (*People* v. *Fuentes, supra,* 54 Cal.3d at p. 714.)

"[T]he procedure for challenging a party's use of peremptory challenges requires the moving party to make a timely objection and to establish a prima facie case to the court's satisfaction." (54 Cal.3d at p. 715.) Because the trial court found defendant's motion to be untimely as to the 12 jurors already sworn, it made no comment on whether defendant had made a prima facie case as to the 4 Hispanic prospective jurors excused from the regular panel of 12 jurors.

Many cases have reiterated the statement that to be timely a *Wheeler* motion should be made before the jury has been sworn. (*People* v. *Howard* (1992) 1 Cal.4th 1132, 1154-1155 [5 Cal.Rptr.2d 268, 824 P.2d 1315]; *People* v. *Thompson* (1990) 50 Cal.3d 134, 179-180 [266 Cal.Rptr. 309, 785 P.2d 857]; *People* v. *Johnson* (1989) 47 Cal.3d 1194, 1216 [255 Cal.Rptr. 569, 767 P.2d 1047].) None of these cases involved the situation presented here. In *People* v. *Thompson, supra,* 50 Cal.3d at page 179, the motion for mistrial based on *Wheeler* was made after the jury was selected and sworn. The California Supreme Court found the motion was untimely for the reasons set forth in *People* v. *Ortega* (1984) 156 Cal.App.3d 63, 69-70 [202 Cal.Rptr. 657].

*People* v. *Ortega, supra,* 156 Cal.App.3d 63 appears to be the only California case to discuss the timeliness of a *Wheeler* motion in detail. The appellate court stated its belief that the proper time for a jury selection motion is "clearly *during the selection process* itself—in the form of a motion for a new jury panel—so that any prejudice can be eliminated *early*

---

[3]Defendant is half Hispanic.

in the proceedings and the selection process may start anew." (*Id.* at p. 68, Italics added.)

■ The *Ortega* court gave five reasons why a *Wheeler* objection "should be made at the earliest opportunity during the voir dire process." (*People* v. *Ortega, supra,* 156 Cal.App.3d at p. 69.)

"First, an early objection will facilitate the moving party's counsel in making the best possible prima facie case. Second, an early objection will place the opposing party on notice so that counsel may consider whether and on what basis to continue using peremptories against cognizable group members and to prepare to make the best explanation feasible. Third, an early objection will alert the court so that it can intelligently rule on the questions of prima facie case and, if one is found, explanations. In other words, this procedure will insure that the court will pay close attention to the questions asked of and answered by the jurors and other matters bearing on the use of peremptory challenges. The longer a party waits to make a *Wheeler* motion the less feasible it will be for the court to recall specific questions and answers and the demeanor of the jurors.

"Fourth, this procedure will promote the efficient and economic administration of justice by permitting the court, if it finds discrimination in the use of peremptory challenges, to dismiss the existing jury panel and obtain a new panel without having to wait until the selection process has been completed.

"Finally, this procedure will help the courts and parties achieve the most fair and correct result, both below and on appeal. For example, in a case where one party is systematically excluding blacks, it is necessary that the record reflect that a challenged juror is, in fact, black. It is also important that the record reflect when no more blacks are left on the jury panel. Similarly, with respect to the systematic exclusion of Hispanics, it is necessary to establish that any Spanish-surnamed jurors who are challenged are, in fact, Hispanic. On the other hand, after all Spanish-surnamed jurors have been challenged, an inquiry of the remaining jury panel may reveal one or more Hispanics who do not bear Spanish surnames.

"For these reasons, we hold that a *Wheeler* motion should be made as early during the selection process as possible and that the motion for mistrial in this case, having been made after the jury was sworn, was untimely. This does not mean that a *Wheeler* motion made immediately before the jury is sworn necessarily will be deemed timely. We set forth only the outer limitation before which *Wheeler* motions must be made." (*People* v. *Ortega, supra,* 156 Cal.App.3d at pp. 69-70, fn. omitted.)

█ The reasons set forth in *Ortega* for early objection simply do not have the same force or logic when applied to the voir dire that occurred in this case. Here, there were several days of group and individual questioning preceded by each prospective juror's filling out a 15-page questionnaire. When the parties began exercising their peremptory challenges, all questioning had ceased and no further questioning was allowed. The peremptory challenges were exercised one right after another in a very short period of time. Whether a *Wheeler* motion in a situation such as presented here is made early on or near the end of the exercise of peremptory challenges adds nothing to the ability to recall questions asked and answers given or to remember the demeanor of the jurors when all questioning occurred over a long previous period of time. Because the exercise of peremptory challenges here was so swift and occurred after the completion of days of questioning, the "early" dismissal of the panel and substitution of a new panel would not in these circumstances promote "the efficient and economic administration of justice."

The only reason for an early objection stated in *Ortega* which has some application here is to put counsel on notice to consider on what basis to continue using peremptory challenges against the cognizable group.

We do not disagree with the proposition that a *Wheeler* motion should be timely made. We do disagree, however, with respondent's position that once the 12 jurors are sworn, a *Wheeler* motion which includes those 12 jurors is untimely even when alternate jurors are being chosen. None of the cases which have stated that a *Wheeler* motion must be made before the jury is sworn were faced with a situation where jury selection continued after the swearing of the panel of 12. A more accurate statement of law would be that to be timely a *Wheeler* objection or motion must be made, at the latest, before jury selection is completed. █ "The general rule is that where a court has indicated that a trial will be conducted with alternate jurors, the impanelment of the jury is not deemed complete until the alternates are selected and sworn." (*In re Mendes* (1979) 23 Cal.3d 847, 853 [153 Cal.Rptr. 831, 592 P.2d 318].)

The concept of when selection of a jury is complete has not been discussed in detail in the context of a *Wheeler* motion; it has been discussed in the context of double jeopardy and the general exercise of peremptory challenges.

Penal Code section 1089 sets forth the rules and procedures applicable to the selection of alternate jurors. It provides in part:

"Whenever, in the opinion of a judge of a superior or of a municipal court about to try a defendant against whom has been filed any indictment or

information or complaint, the trial is likely to be a protracted one, the court may cause an entry to that effect to be made in the minutes of the court, and thereupon, immediately after the jury is impaneled and sworn, the court may direct the calling of one or more additional jurors, in its discretion, to be known as 'alternate jurors.'

"Such alternate jurors must be drawn from the same source, and in the same manner, and have the same qualifications as the jurors already sworn, and be subject to the same examination and challenges; . . .

"Such alternate jurors shall be seated so as to have equal power and facilities for seeing and hearing the proceedings in the case, and shall take the same oath as the jurors already selected, and must attend at all times upon the trial of the cause in company with the other jurors; and for a failure so to do are liable to be punished for contempt.

"They shall obey the orders of and be bound by the admonition of the court, upon each adjournment of the court; but if the regular jurors are ordered to be kept in the custody of the sheriff or marshal during the trial of the cause, such alternate jurors shall also be kept in confinement with the other jurors; and upon final submission of the case to the jury such alternate jurors shall be kept in the custody of the sheriff or marshal and shall not be discharged until the original jurors are discharged, except as hereinafter provided.

"If at any time, whether before or after the final submission of the case to the jury, a juror dies or becomes ill, or upon other good cause shown to the court is found to be unable to perform his duty, or if a juror requests a discharge and good cause appears therefor, the court may order him to be discharged and draw the name of an alternate, who shall then take his place in the jury box, and be subject to the same rules and regulations as though he had been selected as one of the original jurors."

"Alternate jurors are selected at the same time, are subject to the same qualifications and take the same oath as regular jurors. They hear the same evidence and are bound by the same rules and instructions as the regular jurors, and until the verdict is rendered they are at all times available and qualified to participate as regular jurors." (*People* v. *Burgess* (1988) 206 Cal.App.3d 762, 768 [253 Cal.Rptr. 828].) "If . . . the jury cannot function until the alternates have qualified, the jury cannot be said to be complete or impaneled until that time." (*People* v. *Burns* (1948) 84 Cal.App.2d 18, 26 [189 P.2d 868].) "[A] jury is not 'complete or impaneled' until all the alternates are sworn." (*People* v. *Armendariz* (1984) 37 Cal.3d 573, 581 [209 Cal.Rptr. 664, 693 P.2d 243].)

 Selection of alternate jurors has no function other than as part and parcel of jury selection. Jury selection is not completed until the alternates, if alternates are being utilized, are selected and sworn. A *Wheeler* motion is one which challenges the selection of a jury. When the trial court rules on a *Wheeler* motion, it should look to the totality of the relevant facts and should consider all the relevant circumstances. (*Batson* v. *Kentucky, supra,* 476 U.S. at pp. 96-97 [90 L.Ed.2d at pp. 87-88].) The trial court here applied the rule that once the jury is sworn a *Wheeler* challenge cannot be made to the already sworn jurors. This rule did not envision circumstances, such as those present here, where the pattern of challenging Hispanic prospective jurors permeated the selection of the 12 jurors and alternates and the *Wheeler* motion is brought before jury selection is *complete.*

Because of the nature of the selection process utilized in this case, the timeliness concerns expressed in *People* v. *Ortega, supra,* 156 Cal.App.3d 63 either have no application or those which do have application are minimal in light of the constitutional question raised. The pattern of systematic exclusion here involved the selection of the 12 sworn jurors and the selection of the alternates; defendant should not have been precluded from raising his *Wheeler* motion as to all excluded Hispanics. The motion was made before jury selection had been completed. Defendant raised a *Wheeler* motion challenging a systematic exclusion which involved the process of selecting the 12 sworn jurors as well as the alternate jurors. Under the unique circumstances of the particular jury selection here, the trial court should have considered the motion as to all seven challenged Hispanic prospective jurors and not limited its inquiry to only the alternate juror selection process. To hold otherwise would be to allow a potential prima facie pattern of systematic exclusion to go unchallenged.

 "*Wheeler* error has been deemed reversible per se in light of the fundamental right involved." (*People* v. *Snow* (1987) 44 Cal.3d 216, 226 [242 Cal.Rptr. 477, 746 P.2d 452].) Defendant suggests that a limited remand for the court to analyze the *Wheeler* challenges and assess any explanations would be unrealistic because the trial court would be unable to recall the prior circumstances. Respondent does not address this question.

In *People* v. *Snow, supra,* 44 Cal.3d 216, the California Supreme Court discussed limited remands in the context of a *Wheeler* motion:

"We observe that, although our court has rejected such a procedure in prior cases (see *People* v. *Hall* [(1983)] 35 Cal.3d 161, 170-171 [197 Cal.Rptr. 71, 672 P.2d 854] [trial held more than three years before reversal of judgment]; *People* v. *Allen* (1979) 23 Cal.3d 286, 295, fn. 4 . . . [trial

held nearly three years before reversal of judgment]), the United States Supreme Court in the subsequently decided case of *Batson* v. *Kentucky*, *supra*, 476 U.S. at page 100 . . . employed such a remand. (See also *United States* v. *Tindle* (4th Cir. 1986) 808 F.2d 319 [remand after more than three years].)

"In *Batson*, the case had been tried only two years prior to reversal of the judgment. In the present case, voir dire examination commenced in November 1981, approximately six years ago. As in *Hall*, we believe it would be 'unrealistic to believe that the prosecutor could now recall in greater detail his reasons for the exercise of the peremptory challenges in issue, or that the trial judge could assess those reasons, as required, which would demand that he recall the circumstances of the case, and the manner in which the prosecutor examined the venire and exercised his other challenges.' [Citation.]" (*People* v. *Snow*, *supra*, 44 Cal.3d at p. 227.)

The above quote suggests the California Supreme Court would order a limited remand in an appropriate case. The present case appears to be such a case. Jury voir dire began on March 23, 1992, and the jury was sworn on April 6, 1992. Because this was a death penalty case, it is likely counsel and the court paid close attention to and are more likely to remember the specifics of voir dire as opposed to less serious cases. Additionally, the voir dire was detailed and included a 15-page questionnaire. For those reasons, we hold a limited remand to be appropriate.

Because this court finds defendant's motion was timely as to the 12 seated jurors, we need not decide defendant's alternate contentions that his conviction must be reversed because the prosecutor failed to adequately explain his peremptory challenges to the 3 Hispanic alternate jurors or that the trial court failed to make a sincere and reasoned evaluation of the genuineness of the prosecutor's explanations. (See *People* v. *Hall* (1983) 35 Cal.3d 161, 167-168 [197 Cal.Rptr. 71, 672 P.2d 854].)

On remand the court will necessarily reexamine the validity of the prosecutor's reasons for challenging the three Hispanic alternate jurors in the light of the prosecutor's reasons for challenging the four Hispanic jurors on the regular panel. The court will examine "the totality of the relevant facts and . . . consider all the relevant circumstances." *Batson* v. *Kentucky*, *supra*, 476 U. S. at pp. 96-97 [90 L.Ed.2d at pp. 87-88].)

## II.

*Sentencing\**

. . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment of conviction of murder and finding of special circumstance is reversed, and the matter is remanded with directions to conduct a new *Wheeler* hearing, assuming two findings: (1) that the *Wheeler* motion was timely as to all seven Hispanic jurors peremptorily excluded by the prosecution; and (2) that defendant has established a prima facie case of wrongful exclusions of the Hispanic jurors, thereby placing the burden of proof on the prosecution to justify the exclusion of these jurors.

If the trial court grants the motion after the hearing, then defendant shall be given a new trial. If the trial court denies the motion after the hearing, the judgment shall be reinstated after a new sentencing hearing in accord with this opinion.

Best, P. J., and Thaxter, J., concurred.

Respondent's petition for review by the Supreme Court was denied November 10, 1993. George, J., was of the opinion that the petition should be granted.

---

\*See footnote, *ante*, page 692.