Filed 4/13/15  P. v. Farmer CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B250695 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. MA057202) |
| KENNETH ANTHONY FARMER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Daviann L. Mitchell, Judge.  Reversed and remanded with directions.

Ann Krausz, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, Chung Mar and Jessica C. Owen, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Kenneth Anthony Farmer appeals from the judgment entered following his conviction by jury of petty theft with prior theft-related convictions, with admissions he suffered a prior felony conviction and five prior felony convictions for which he served separate prison terms. (Pen. Code, §§ 666, subd. (a), 667, subd. (d), & 667.5, subd. (b).) The court sentenced appellant to prison for seven years. We reverse the judgment and remand the matter with directions.

## *FACTUAL SUMMARY*

1. *Appellant's Wheeler Motion Based on Race, and Objection Based on Gender.*[1]

During jury selection, the prosecutor's first five peremptory challenges to prospective jurors (hereafter, jurors) were to three women, i.e., to Jurors E3431, G0166, then C1613, then two men. After the challenge to the second of the two men (hereafter, the second man), appellant, outside the presence of the jury, objected to the challenges to Juror C1613, and the second man, on the ground they were challenged because they were African-Americans. The court, discussing Juror C1613 and the second man, noted, inter alia, both were African-Americans and Juror C1613 was "in family services at a funeral home."

The court concluded appellant had made a prima facie showing the prosecutor had challenged Juror C1613 and the second man based on group bias predicated on race. The court invited the prosecutor to tender race-neutral justifications for the challenges. The prosecutor, first discussing Juror C1613, indicated Juror C1613 was a counselor at a county funeral home and the prosecutor did not like jurors associated with social services, because such jurors might be sympathetic to the defense.

---

[1] The facts pertaining to the present offense are not pertinent to this appeal; we simply note the record reflects that on August 22, 2012, appellant committed the present offense.

The prosecutor then stated, "The second thing that went into it was a gender composition on the jury. You'll notice that she's not the only one, there have been a few at least three if not all four of my challenges have been to females[2] that's because I'm trying for my own reasons, I want to have a certain gender composition on the jury." Appellant's counsel then stated, "Raise new objection on that as well." The court did not then comment, or rule, upon the objection and appellant did not secure a ruling on it.[3]

After appellant's objection, the prosecutor stated, "I like to have a certain balance of jurors and, . . . whether it's -- I'm not kicking her because she's a female, but I like to have a certain breakdown of jurors as it relates to it. That's one thing that went into it. [¶] And then timely [*sic*], there were just other jurors that I like better. And, . . . [another juror] was someone I liked better, and there's a number of people within the pool that I like better, and that I may want to try to get for that reason." The prosecutor then tendered a race-neutral justification as to the second man.

Based on the prosecutor's tendered justifications, the court found the prosecutor did not challenge Juror C1613 or the second man on the ground of group bias. The court noted Juror C1613 was a counselor and, regardless of her capacity, counselors usually were more kind and sympathetic. The court treated appellant's objection to the prosecutor's challenges to Juror C1613 and the second man, on the ground of race, as a *Wheeler* motion and denied it.[4]

---

[2]     As indicated, up to this point the prosecutor had exercised five, not four, challenges, only three of which were to women.

[3]     Appellant's objection could be construed as a motion pursuant to *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*) based on gender. However, because the trial court did not rule on the objection and because this case can be resolved based on the later *Wheeler* motions based on gender that the trial court denied, we do not discuss the validity of appellant's objection.

[4]     The validity of the trial court's ruling on appellant's *Wheeler* motion based on race is not at issue in this appeal.

2. *Appellant's First Wheeler Motion Based on Gender.*

Appellant later, still outside the presence of the jury, objected the prosecutor had challenged Juror C1613 on the basis of gender. The court then stated, ". . . that is now untimely because the last juror that was excused was a male[5] and we only have two jurors that are excused, one male and one female.[6] It may be more timely in the future, but at this point it's untimely as I see it on its face because of the composition of the two that were excused and the arguments that were made."

The court later stated, "I'll accept the defense's arguments, I'll also accept the People's record. I have reviewed and denied the motion [i.e., the *Wheeler* motion based on race], and I'm going to find untimely the additional *Wheeler* motion on gender." (Italics added.)

3. *Appellant's Second Wheeler Motion Based on Gender.*

The prosecutor subsequently, in open court, exercised peremptory challenges as to four jurors, i.e., two men, then two women. After the challenge to the first man but before the challenge to the second man, the prosecutor accepted the panel. The two women were Juror V9212, then Juror R3715.

After the prosecutor challenged Juror R3715, appellant, outside the presence of the jury, made a *Wheeler* motion and stated, "[the prosecutor] is kicking the women off in the panel. He did make a comment during our previous [*Batson v. Kentucky* (1986) 476 U.S. 79 [90 L.Ed.2d 69] (*Batson*)] objection, and with regards to getting rid of women on the panel. Since then I've paid attention to the jurors that were dismissed. One woman was dismissed, I made no objection. Then the last two witnesses [*sic*] that were dismissed were women."

---

5    This was an apparent reference to the previously mentioned second man challenged by the prosecutor.

6    This comment by the trial court was unclear. As indicated, up to this point there were five (not two) jurors excused as a result of challenges by the prosecutor, i.e., three women and two men (not merely one man and one woman). One man (the second man) and one of the women (Juror C1613) were African-Americans.

4

The court noted 18 of the 36 jurors in the panel were women, and five of the nine persons challenged by the prosecutor were women, "[s]o it's nearly a split between male and female." The court also noted the prosecutor had accepted the panel once.

The court recounted background information as to each of the total of five women the prosecutor previously had challenged, i.e., Jurors E3431, G0166, C1613, V9212, and R3715. The court stated it did not find a prima facie case had been made. Fairly read, the record reflects the trial court concluded appellant had failed to show a "strong likelihood" the challenges were made because of group bias; therefore, appellant had failed to overcome the presumption the prosecutor's challenges were constitutional. The court thus implicitly denied appellant's second *Wheeler* motion based on gender.

The court indicated it was basing its above mentioned conclusion on the following factors as to the five women. Juror E3431 had prior criminal jury experience, but the court did not know how that affected matters. She was a nurse, which could cause the prosecutor to be concerned about her sympathies. Nurses tended to be more nurturing. Juror G0166's father had been convicted of molestation and her husband was a law enforcement officer. One could conclude she had biases for and against law enforcement.

Juror C1613 was the previously discussed counselor who could be sympathetic to the defense. Juror V9212's mother had been the victim of home invasion robbery.[7] The court stated, "I think that would be a concern that she may have some animosity one way or another either towards law enforcement, even though she denied that, or because she's [*sic*] been the victim of a crime, that may create a concern for the prosecution." Juror R3715's brother-in-law had been convicted of drug- and theft-related crimes, and Juror R3715 had been the victim of a crime similar to the present alleged offense, which could be a matter of concern.

---

[7]     During voir dire, Juror V9212 testified her mother was beaten and robbed in her home, her mother called law enforcement, and the culprits were caught and prosecuted. Juror V9212 also testified she thought law enforcement handled the matter appropriately and the system worked for her "as best [as] it was able."

5

The court then indicated that, "even though I have made no prima facie showing," and the court was not requesting the prosecutor to state his reasons for exercising the challenges at issue, the court would allow the prosecutor to state his reasons for them if the prosecutor voluntarily wanted to do so.

The prosecutor then indicated as follows. Juror C1613 (the counselor) already had been discussed. As to Juror E3431, "[a]ctually that one didn't have anything to do with the RN, she just she looked like my son's teacher that I didn't like in preschool, and when I was looking at her, we were making eye contact, I never addressed her because there was something about her that I didn't like from the very beginning. So I just kind of stayed away from her. I knew that I wasn't going anywhere with her eventually."

As to Juror G0166, the prosecutor stated, "she sat quietly, she didn't really seem engaged in the proceedings, . . . I guess it's kind of a [double-edged] sword. I don't want someone raising their hand all the time either, but she kind of sat and where the questions were opened up to . . . the general audience, she just kind of sat there. And as I was looking at her, as I was scanning the jurors, there was just kind of nothing really registering with her as I was discussing it, so I didn't have a good feeling about her."

The prosecutor stated Juror V9212 ". . . from the very first moment she spoke showed a very loud voice and I didn't even turn around, I heard her talking. It was almost like her voice projected, and even some of the things that she said which I did note at the time, I kind of quickly had the . . . feeling that this was a woman who I didn't really feel a connection with. She was, . . . a homemaker, student, and again at her age I was a little concerned with that aspect of it, . . . but more it was kind of a general feeling from the moment she opened her mouth and started speaking, it was just kind of a piercing, grating voice, so I got rid of her because I thought it would not [be] a good mix with other jurors should it get to that level."

As to Juror R3715, the prosecutor stated, "[t]hat was just simply based on the fact that her brother had been convicted of a theft-related conviction [*sic*]. And with this being the same situation, . . . I understand she said that he was treated fairly, but I didn't want to keep her for that purpose." The court later stated, "Record has been made. The *Wheeler* motion had been denied." (Italics added.) Later, the parties accepted the panel and an alternate juror, and the jury and alternate juror were sworn.

## *ISSUE*

Appellant claims the trial court erroneously denied his two *Wheeler* motions that alleged the prosecutor impermissibly exercised peremptory challenges to women based on gender.

## *DISCUSSION*

Appellant claims as previously indicated. We agree. In *Wheeler*, *supra,* 22 Cal.3d 258, our Supreme Court stated, "[w]e conclude that the use of peremptory challenges to remove prospective jurors on the sole ground of group bias violates the right to trial by a jury drawn from a representative cross-section of the community under article I, section 16, of the California Constitution." (*Wheeler,* at pp. 276-277.) *Batson* reached the same conclusion based on the federal equal protection clause. (*People v. Huggins* (2006) 38 Cal.4th 175, 226.)

When a defendant asserts at trial the prosecution's use of peremptory challenges violates the federal Constitution because they are based on gender, the defendant must make out a prima facie case by showing the totality of the relevant facts gives rise to an inference of discriminatory purpose. The burden then shifts to the State to explain adequately the gender exclusion by offering permissible gender-neutral justifications for the challenges. Thereafter, if a gender-neutral explanation is tendered, the trial court must decide whether the opponent of the challenge has proven purposeful gender discrimination. The identical three-step procedure applies when the challenge is brought under the California Constitution. (Cf. *People v. Cowan* (2010) 50 Cal.4th 401, 447.)[8]

---

[8]     References to *Wheeler* below are to *Batson* as well.

7

Respondent concedes women are a cognizable group for purposes of *Wheeler* analysis. (*People v. Garceau* (1993) 6 Cal.4th 140, 171; *People v. Gray* (2001) 87 Cal.App.4th 781, 788.)

Appellant brought two *Wheeler* motions based on gender. The court denied the first as untimely. The court denied the second on the ground appellant did not pass the first step, i.e., he failed to make out a prima facie case by showing the totality of the relevant facts gave rise to an inference of discriminatory purpose.

We initially address the trial court's denial of appellant's first *Wheeler* motion based on gender. In *People v. Gore* (1993) 18 Cal.App.4th 692 (*Gore*), the court stated, "Many cases have reiterated the statement that to be timely a *Wheeler* motion should be made before the jury has been sworn. [Citations.]" (*Gore*, at p. 701.) "[T]o be timely a *Wheeler* objection or motion must be made, at the latest, before jury selection is completed." (*Gore*, at p. 703.)

Appellant made his first *Wheeler* motion based on gender before the jury was sworn. Respondent concedes the trial court erred by concluding this motion was untimely. We accept the concession. We hold the trial court erred by concluding appellant's first *Wheeler* motion based on gender was untimely.

The remaining issue pertains to remedy. When a trial court erroneously denies a *Wheeler* motion on the ground the motion is untimely, an appellate court, instead of completely reversing the conviction, may remand the matter for limited proceedings. (*People v. Rodriguez* (1996) 50 Cal.App.4th 1013, 1023-1025, 1036 (*Rodriguez*); *Gore*, *supra*, 18 Cal.App.4th at pp. 705-707.) In both *Rodriguez* and *Gore*, the defendant, after 12 jurors were sworn, made a single *Wheeler* motion during the selection of the alternate jurors, claiming prosecutorial challenges to certain of the 12 sworn jurors, and a certain alternate juror(s), were based on group bias. (*Rodriguez*, at pp. 1020-1023). The trial court in each case concluded the motion was untimely as to the challenges to sworn jurors but timely as to the challenged alternate juror(s). (*Id.* at pp. 1021, 1023.)

8

In *Gore*, the trial court expressly found the defendant had made a prima facie case as to the challenged alternates, the trial court asked the prosecutor to explain his reasons for those challenges and, after the prosecutor complied, the trial court denied the *Wheeler* motion. (*Gore, supra*, 18 Cal.App.4th at pp. 698-699.) *Gore* concluded, "the trial court erroneously limited defendant's *Wheeler* motion to [three] challenges made during the selection of the alternate jurors, thereby foreclosing all consideration of the People's [four] peremptory challenges to Hispanic prospective jurors removed during the selection of the panel of 12 jurors." (*Gore*, at p. 696.) *Gore* stated, "the trial court should have considered the motion as to all seven challenged Hispanic prospective jurors and not limited its inquiry to only the alternate juror selection process." (*Id.* at p. 705.)

*Gore* later stated, "On remand the court will necessarily reexamine the validity of the prosecutor's reasons for challenging the three Hispanic alternate jurors in the light of the prosecutor's reasons for challenging the four Hispanic jurors on the regular panel. The court will examine 'the totality of the relevant facts and . . . consider all the relevant circumstances.' [Citation.]" (*Id.* at p. 706.) *Gore* remanded the matter, directing the trial court to assume (1) the *Wheeler* motion was timely as to all seven challenges and (2) the defendant had established a prima facie case of wrongful exclusions (*id.* at p. 707), thus placing the burden of proof on the prosecution to justify the challenges. (*Ibid*.)

In *Rodriguez*, the trial court did not expressly find the defendant had made a prima facie case as to one challenged alternate juror, but the court asked the prosecutor to explain his reasons for that challenge and, after the prosecutor complied, the trial court denied the *Wheeler* motion. (*Rodriguez*, *supra,* 50 Cal.App.4th at p. 1022.) The defendant claimed the trial court erred by finding his *Wheeler* motion untimely as to the prosecutor's challenges to two sworn jurors. (*Id.* at pp. 1022-1023.) Relying in part on *Gore*, *Rodriguez* remanded the matter to permit the trial court to determine the validity of the prosecutor's challenges to the two sworn jurors, to determine whether the prosecutor's challenges were racially neutral, and to conduct further proceedings accordingly. (*Id.* at pp. 1020-1021, 1036.)

9

In determining whether remand was appropriate, *Gore* and *Rodriguez* considered, inter alia, the period between jury voir dire and the appellate court opinion, since this would impact whether the trial court and parties would be able to remember what happened during voir dire in the event of a remand. In *Gore*, the period was between one and two years. (*Gore*, *supra,* 18 Cal.App.4th at p. 706.) In *Rodriguez*, the period was two months short of three years. (*Rodriguez*, *supra,* 50 Cal.App.4th at pp. 1020, 1025.)

In the present case, on February 28, 2013, voir dire began, the prosecutor challenged the first three women (Jurors E3431, G0166, and C1613), the court denied appellant's first *Wheeler* motion based on gender as untimely, and the prosecutor challenged the fourth woman (Juror V9212). On March 4, 2013, the prosecutor challenged the fifth woman (R3715) and the court denied appellant's second *Wheeler* motion based on gender. All of these events occurred only about two years ago. The reporter's transcript reflects the proceedings below, including voir dire, and is available for review. Under these circumstances, we conclude this matter may be remanded.

Moreover, although, *Gore* and *Rodriguez* each involved one *Wheeler* motion based on gender while the present case involves two, this is a distinction without a difference. The essence of what happened here is what happened in *Gore* and *Rodriguez*: the trial court here ruled appellant's constitutional challenge was partially untimely and partially timely.

In the present case, on February 28, 2013, after the court invited the prosecutor to tender race-neutral justifications, the prosecutor began to do so by discussing Juror C1613. The prosecutor stated, inter alia, "The second thing that went into it was a gender composition on the jury. You'll notice that she's not the only one, there have been a few at least three if not all four of my challenges have been to females that's because I'm trying for my own reasons, I want to have a certain gender composition on the jury." The prosecutor miscounted the total number of his peremptory challenges up to that point— there were (including men and women) five, not four. The prosecutor miscounted the total number of his challenges to women—there were three, not four. However, the

10

prosecutor clearly indicated *all* of his challenges to women (Jurors E3431, G0166, and C1613) to that point were based on gender.

It is true the prosecutor stated, "I'm not kicking [Juror C1613] because she's a female." However, the prosecutor's credibility in making that statement was undermined by the facts (1) he made that statement only after appellant "raise[d] [his] new objection" (presumably on the ground the prosecutor was impermissibly challenging the women based on gender), and (2) immediately after stating he was not kicking Juror C1613 because she was a female, the prosecutor stated, "I like to have a certain breakdown of jurors as it relates to it." The fact the prosecutor challenged Juror C1613 on the ground of gender, not as an end in itself but to affect the jury composition not only does not change the fact he challenged her, at least in part, based on gender but demonstrates he did so, at least in part, to affect jury composition in a way that is constitutionally prohibited.

We note that, after the prosecutor indicated he had challenged the three women jurors based on gender, and after appellant "raise[d] [his] new objection" to that fact, the trial court did not then comment on the fact the prosecutor effectively stated he had challenged the women on an unconstitutional basis—gender. When appellant later made his first *Wheeler* motion based on gender, the trial court denied it as untimely but did not address the fact the prosecutor effectively stated he had challenged the three women on an unconstitutional basis. When appellant made his second *Wheeler* motion based on gender, the trial court discussed various factors leading to its decision appellant had not made a prima facie showing, but never discussed the fact the prosecutor effectively stated he had challenged the three women on an unconstitutional basis.

We hold the trial court erred by concluding appellant did not make out a prima facie case and therefore denying appellant's second *Wheeler* motion based on gender.

11

We further hold appellant has made out a prima facie case by showing the totality of the relevant facts gives rise to an *inference*[9] of discriminatory purpose.

We will remand the matter for the limited purpose of permitting the trial court to conduct a new *Wheeler* hearing, during which the trial court shall assume (1) appellant's second *Wheeler* motion was timely as to all five women (i.e., Jurors E3431, G0166, C1613, V9212, and R3715) peremptorily excluded by the prosecutor, and (2) appellant has made out a prima facie case by showing the totality of the relevant facts gives rise to an *inference* of discriminatory purpose, thereby placing the burden of proof on the prosecution to justify the exclusion of these jurors.  If the trial court grants the motion after the hearing, appellant shall be given a new trial.  If the trial court denies the motion after the hearing, the judgment shall be reinstated.  (See *Gore*, *supra,* 18 Cal.App.4th at p. 707.)

We express no opinion as to how the trial court should resolve the issues of whether the prosecutor offered a permissible gender-neutral justification for a challenge, or, if the prosecutor tendered a gender-neutral explanation, whether the prosecutor engaged in purposeful gender discrimination.

---

[9]     Respondent concedes the trial court, when deciding whether appellant had made out a prima facie case, used the wrong standard by deciding whether appellant had failed to show by a "strong likelihood" the prosecutor's challenges were based on group bias. We accept the concession and conclude the trial court erred in this respect as well.

### *DISPOSITION*

The judgment is reversed and the matter is remanded with directions to the trial court to conduct a new *Wheeler* hearing and further proceedings consistent with this opinion.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


KITCHING, J.

We concur:


EDMON, P. J.


ALDRICH, J.