Filed 7/22/21  P. v. Carrera CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>OCTAVIO ANTONIO CARRERA,<br><br>    Defendant and Appellant. | G060130<br><br>(Super. Ct. No. 18CR007498)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Monterey County, Andrew G. Liu, Judge.  Affirmed.

Laura Burgardt, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Catherine A. Rivlin and Allen R. Crown, Deputy Attorneys General, for Plaintiff and Respondent.

Octavio Antonio Carrera appeals from a judgment after a jury convicted him of arson. Carrera argues the trial court erred by denying his *Batson/Wheeler*[1] motion and refusing to instruct the jury on a lesser included offense. Neither contention has merit, and we affirm the judgment.

## FACTS

Late one night, Officer Daniel Garcia responded to a call about a vehicle fire at a car dealership. When Garcia arrived, he saw flames coming from a truck's bed. The only person in the area was Carrera, who was standing about 10 feet from the truck. He appeared dirty and his hands were blackened as though he had touched something burnt. Garcia was a certified Spanish speaking officer and spoke to Carrera in Spanish.[2]

Garcia advised Carrera of his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436. Carrera admitted he used a lighter to start the fire. Carrera said he started the fire "[b]ecause . . . that lady was a witch[]" and they used "witchcraft" on him. The dealership owner confirmed Carrera did not purchase the truck he burned.

An information charged Carrera with arson (Pen. Code, § 451, subd. (d), all further statutory references are to the Penal Code). During jury voir dire, the trial court denied Carrera's *Batson/Wheeler* motion. The trial court instructed the jury on arson (CALCRIM No. 1515) but refused Carrera's request to instruct on the lesser included offense of unlawfully causing a fire (CALCRIM No. 1532). During closing argument, Carrera's trial counsel argued there was insufficient evidence he started the fire and contended he did not act maliciously because he was overcome by witchcraft.

---

[1] *Batson v. Kentucky* (1986) 476 U.S. 79 (*Batson*); *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*).

[2] Garcia wore a body camera that recorded his conversation with Carrera. At trial, the video was played for the jury, and the trial court admitted into evidence an English language translation.

The jury convicted Carrera of arson. The trial court suspended imposition of sentence and placed Carrera on three years of formal probation.

## DISCUSSION

### I. *Batson/Wheeler*

Carrera argues the trial court erred by denying his *Batson/Wheeler* motion. We disagree.

### A. *Background*

Prospective Juror No. 5 was a male Hispanic who worked full-time in a family business and his absence would disrupt the business. He was single, had no children, and attended two years of college. He had never been on a jury and could be fair and impartial. Carrera's defense counsel asked what jurors thought when they heard "arson." Juror No. 5 stated, "It's when somebody messes with somebody else's stuff, you know? Keying somebody's car and breaking their plants, you know, so we have roses where you destroy it, that could be arson."

Prospective Juror No. 10 was a single female Hispanic who graduated from law school and was studying for the bar examination. She did not think her legal education or the fact a family member worked in the court's jury services department would impair her ability to be fair and impartial. When the prosecutor asked Juror No. 10 if she had heard about circumstantial evidence in her criminal law class, she said, "A little bit, yeah."

Prospective Juror No. 7 was a male Hispanic who was married, had children, attended some college, and worked for a cable company. He had never served on a jury before and believed he could be fair. The prosecutor stated reasonable doubt did not mean he needed to prove guilt with 100 percent certainty. When the prosecutor asked Juror No. 7 if he was comfortable with that, he answered, "I thought you did. I don't know." The trial court read the reasonable doubt jury instruction.

3

Prospective Juror No. 16 was a male professor who was divorced and had one daughter. He had not served on a jury and stated he could be fair. Carrera's defense counsel asked if anyone was concerned Carrera was not an English speaker. Juror No. 16 commented that because Carrera did not speak English, "he may not be familiar with our laws and he may not be familiar with if he's spoken to and he's given a question that the response, I mean, may be misunderstood based on his lack of English." The prosecutor gave the jury a hypothetical when discussing motive. He asked jurors to assume he walked into the courtroom disheveled and punched the trial judge in the face. The prosecutor asked if it mattered why he did so. Juror No. 16 said it was not okay and "It might help to explain why." The court and the prosecutor asked if he needed to know why, and Juror No. 16 said, "No." The prosecutor asked if anyone would have a problem following the law. Juror No. 16 asked if the trial court was going to instruct on the factors the jurors needed to consider and if the prosecutor was correct in saying he did not "need to present all witnesses and all evidence." The court answered that was true.

Both the prosecutor and Carrera's defense counsel passed for cause. The prosecutor exercised a peremptory challenge to excuse Juror No. 5, defense counsel excused Juror No. 24, and the prosecutor excused Juror No. 10. Defense counsel excused Juror No. 15, and the prosecutor excused Juror No. 7. Defense counsel raised a challenge with respect to Juror No. 7, and there was an unreported sidebar discussion. After the trial court excused Juror No. 7, Carrera accepted the panel. The prosecutor excused Juror No. 16, and both parties accepted the panel.[3] Alternate jurors were selected, and trial commenced.

---

[3]     The prosecutor also exercised a peremptory challenge to excuse Juror No. 9. She was a Caucasian juror who was not part of the trial court's ruling and not the subject of this appeal.

4

During trial, the trial court put on the record that after the prosecutor excused Juror No. 7, Carrera's trial counsel made a *Batson/Wheeler* motion. The court stated it spoke with the attorneys at the bench and denied the motion. The court afforded counsel the opportunity to make a record.

Carrera's trial counsel argued the prosecutor excused four prospective jurors who spoke Spanish and had Hispanic or Latinx last names. She asserted the prosecutor's justification for excusing Juror No. 7 was inadequate.

The trial court stated the following: "The [prosecutor] challenged peremptorily [Juror] [No.] 5, who I believe was a male Hispanic; [Juror] [No.] 10, who was a female Hispanic I think; and [Juror] [No.] 7, who was a male Hispanic. And after [Juror] [No.] 7, that was at the time that the challenge was made. [¶] Before I let [Juror] [No.] 7 go I asked him to stand and hold tight before we let him go and we discussed it up at the bench. [¶] . . . [T]hen I asked the [prosecutor] to explain their reasoning." After the prosecutor spoke briefly, the court added Carrera's trial counsel later challenged Juror Nos. 16 and 9 and asked counsel to focus on Juror Nos. 5, 7, and 10.

The prosecutor offered justifications for excusing Juror Nos. 5 and 10, neither of whom Carrera challenges on appeal. As to Juror No. 7, the prosecutor explained the trial court and Carrera's trial counsel had already explained reasonable doubt before he discussed the concept and there was no requirement of 100 percent certainty. He said Juror No. 7 was the only prospective juror who had ever said a prosecutor had "to prove it 100 percent certain." The prosecutor said that after the court, Carrera's trial counsel, and he had explained the concept, "it still had not become clear to that juror." The prosecutor concluded "that was the reason why I exercised a peremptory challenge on him."

With respect to Juror No. 16, the prosecutor stated the following: "I kicked him because he talked about using -- I don't know if it was in the context of [Carrera] having an interpreter or using an interpreter, or the witness using an interpreter, but the

5

phrase that I recall standing out with him is that particular responses because of the language barrier may be misunderstood.  And that's sort of almost the exact issue that we have in this particular case despite a Spanish-speaking officer that the translation issues, the meaning of the words that are on the body cam video are going to be at issue.  [¶] And so that was my basis for kicking Juror [No.] 16 is that it appeared that he was going to be looking for an evidentiary issue that could arise in the case."

Carrera's trial counsel argued the prosecutor's justification for excusing Juror Nos. 5 and 10 was improper and submitted.

The trial court accepted the prosecutor's justifications for excusing Juror Nos. 5 and 10.  The court also accepted the prosecutor's justifications for excusing Juror No. 7.  The court reasoned it was "certainly rare" that a juror questioned the explanation of the burden of proof and belief it was proof beyond all reasonable doubt.  The court concluded that based on the totality of the circumstances the prosecutor excused Juror Nos. 5, 7, and 10 for race-neutral reasons based on the evidence and trial strategies.

The trial court explained it did not address Juror No. 16 at the bench because the prosecutor did not challenge him at that point and Carrera's trial counsel did not raise it until this hearing.[4]  The court though accepted the prosecutor's justification for excusing Juror No. 16.  The court stated the following:  "This juror did make a comment that was not shared by the other jurors relating to how a language difficulty can affect an individual's understanding of the conversation.  And I think specifically he referenced the laws and clearly in this case that's an issue that's being presented.  So it doesn't surprise me at all that the [prosecutor] challenged Juror [No.] 16 on a non-race-based basis."  The court concluded the prosecutor did not excuse Juror No. 16 based on group bias.

---

[4]     Unlike Juror Nos. 5, 7, and 10, the trial court did not specify Juror No. 16 was Hispanic.  However, the Attorney General does not dispute he was.

After Carrera's trial counsel submitted, the prosecutor noted the jury included Hispanic and Spanish-speaking individuals. The court agreed and added the "record will speak for itself."

*B. Law*

"The United States and California Constitutions prohibit the discriminatory use of peremptory challenges. [Citations.] A three-step inquiry governs the analysis of *Batson/Wheeler* claims. 'First, the defendant must make out a prima facie case "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." [Citation.] Second, once the defendant has made out a prima facie case, the "burden shifts to the State to explain adequately the racial exclusion" by offering permissible race-neutral justifications for the strikes. [Citations.] Third, "[i]f a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination."' [Citation.]" (*People v. Miles* (2020) 9 Cal.5th 513, 538 (*Miles*).)

"''"The proper focus of a *Batson/Wheeler* inquiry, of course, is on the subjective *genuineness* of the race-neutral reasons given for the peremptory challenge, *not* on the objective reasonableness of those reasons. . . . All that matters is that the prosecutor's reason for exercising the peremptory challenge is sincere and legitimate, legitimate in the sense of being nondiscriminatory."' [Citation.] '"At the third stage of the *Wheeler/Batson* inquiry, 'the issue comes down to whether the trial court finds the prosecutor's race-neutral explanations to be credible. Credibility can be measured by, among other factors, the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy.'"' [Citation.]" (*Miles, supra,* 9 Cal.5th at p. 539.)

"Where, as here, the trial court ruled pursuant to the third stage of the analysis, we skip to that stage to examine whether the trial court properly credited the prosecutor's reasons for the challenges. 'Review of a trial court's denial of a

7

*Wheeler/Batson* motion is deferential, examining only whether substantial evidence supports its conclusions. [Citation.] "We review a trial court's determination regarding the sufficiency of a prosecutor's justifications for exercising peremptory challenges '"with great restraint."' [Citation.] We presume that a prosecutor uses peremptory challenges in a constitutional manner and give great deference to the trial court's ability to distinguish bona fide reasons from sham excuses. [Citation.] So long as the trial court makes a sincere and reasoned effort to evaluate the nondiscriminatory justifications offered, its conclusions are entitled to deference on appeal."' [Citations.]" (*Miles, supra,* 9 Cal.5th at p. 539.)

*C. Analysis*

Here, substantial evidence supported the trial court's conclusion the prosecutor did not excuse Juror Nos. 7 and 16 based on group bias. We address each juror separately.

With respect to Juror No. 7, the trial court explained the concept of reasonable doubt did not require the evidence to eliminate all possible doubt. Carrera's trial counsel also discussed the reasonable doubt standard. The prosecutor too stated the concept of reasonable doubt did not require 100 percent certainty. When the prosecutor asked Juror No. 7 if he was comfortable with this, he answered, "I thought you did. I don't know." The prosecutor expressed concern that despite three attempts at explaining the concept of reasonable doubt, Juror No. 7 continued to believe it required 100 percent certainty. The trial court concurred this was rare.

A concern that a prospective juror will be unable to understand the case is a legitimate basis for a peremptory challenge. (*People v. DeHoyos* (2013) 57 Cal.4th 79, 108-109; *People v. Rodriguez* (1999) 76 Cal.App.4th 1093, 1114 [juror successfully "challenged based on her difficulty in understanding the burden of proof"].) The record here supports the trial court's evident view the prosecutor had a race-neutral and nonpretextual reason for challenging Juror No. 7—his apparent inability to understand

8

the law despite repeated attempts to explain it. This refutes Carrera's assertion Juror No. 7 was simply confused.

Carrera relies on the fact that after this exchange and the trial court read the reasonable doubt instruction, all the jurors indicated they understood the instruction by shaking their heads in agreement. This is not borne out by the record. After the court read the instruction, the prosecutor immediately began discussing the distinction between doubt that was reasonable and doubt that was unreasonable and whether the jurors understood. The prosecutor's question did not concern the level of certainty. Additionally, even if Juror No. 7 indicated he understood reasonable doubt after the trial court read the instruction, for the second time, that does not undermine the prosecutor's reliance on this circumstance. (*People v. Mills* (2010) 48 Cal.4th 158, 177, fn. 5.)

Carrera also complains the prosecutor only questioned Juror No. 7 about the concept of reasonable doubt and this indicates the prosecutor sought reasons to excuse Hispanic or Latinx jurors. He cites *Miller-El v. Cockrell* (2003) 537 U.S. 322, 344, for the proposition "if the use of disparate questioning is determined by race at the outset, it is likely a justification for a strike based on the resulting divergent views would be pretextual." The record does not support the conclusion the prosecutor engaged in disparate questioning aimed at a cognizable group. Indeed, Carrera does not argue on appeal the prosecutor improperly excused two other members of the cognizable group, Juror Nos. 5 and 10.

Additionally, the empaneled jury included members of the cognizable group. "[W]hile not conclusive, the fact that the jury included [a member of the cognizable group] 'is an indication of good faith [by the prosecutor] in exercising peremptories.' [Citation.]" (*People v. Chism* (2014) 58 Cal.4th 1266, 1315-1316.)

As to Juror No. 16, Carrera's trial counsel asked whether anyone was concerned Carrera was not an English speaker. Juror No. 16 commented that because Carrera did not speak English, "he may not be familiar with our laws and he may not be

9

familiar with if he's spoken to and he's given a question that the response, I mean, may be misunderstood based on his lack of English." Although the prosecutor referenced translation issues, he added Juror No. 16 expressed the "language barrier" might cause him to search for "an evidentiary issue." In concluding the prosecutor did not excuse Juror No. 16 based on group bias, the trial court reasoned the juror stated the language barrier could have prevented him from understanding our laws. The court mused he was not surprised the prosecutor excused Juror No. 16.

Preliminarily, we note the prosecutor's comment the language barrier was an issue in this case was incorrect. Garcia, the responding officer, was a certified Spanish speaker. On appeal, the Attorney General agrees this was not the issue. But the prosecutor clarified the basis for excusing this juror—his apparent belief Carrera's inability to speak English prevented him from understanding our criminal laws and was a factor in his guilt.

Sympathy toward a defendant is a valid, nondiscriminatory reason to excuse a prospective juror. (*People v. Stanley* (2006) 39 Cal.4th 913, 939.) Additionally, the apparent inability to make a decision based on the evidence is a valid basis for excusing a juror. (*People v. Johnson* (1989) 47 Cal.3d 1194, 1217, overruled on other grounds in *People v. Gutierrez* (2017) 2 Cal.5th 1150, 1174 (*Gutierrez*).) The record here supports the trial court's evident view the prosecutor had a race-neutral and nonpretextual reason for challenging Juror No. 16—his apparent inability to base his decision on the law and evidence. This refutes Carrera's assertion the prosecutor excused this juror because he identified with Carrera.

Carrera complains the prosecutor's failure to question Juror No. 16 on this point supports the conclusion his justification was a pretext. (*Miller-El v. Dretke* (2005) 545 U.S. 231, 246 [prosecution's failure to engage in any meaningful voir dire suggests explanation pretextual].) It was Carrera's trial counsel's question that provided the answer in question. Where, as here, the information to justify the excusal is already part

of the record through questioning by the court or the other party, the failure to ask additional questions is of no consequence. (*People v. Arellano* (2016) 245 Cal.App.4th 1139, 1163.) Additionally, the record before us demonstrates the prosecutor did engage in meaningful voir dire.

Finally, Carrera contends the trial court failed its duty to perform a "'sincere and reasoned evaluation'" because it "simply parroted" the prosecutor's justifications. The trial court must examine only the reasons the prosecutor expresses. (*Gutierrez, supra,* 2 Cal.5th at p. 1167.) "'""[T]he trial court is not required to make specific or detailed comments for the record to justify every instance in which a prosecutor's race-neutral reason for exercising a peremptory challenge is being accepted by the court as genuine.""'" [Citation.]" (*Miles, supra,* 9 Cal.5th at p. 539.)

Here, the trial court examined the reasons and found them to be credible and reasonable. Our role is to determine whether the court's conclusions were supported by substantial evidence. They were. Thus, the trial court properly denied Carrera's *Batson/Wheeler* motion.

## II. Lesser Included Offense Instruction

Carrera contends the trial court erred by refusing to instruct the jury on the lesser included offense of unlawfully causing a fire (CALCRIM No. 1532). Not so.

### A. Sufficiency of the Evidence

### 1. Background

During a discussion of jury instructions, Carrera's trial counsel requested the trial court instruct the jury with CALCRIM No. 1532, unlawfully causing a fire, a lesser included offense of arson. The prosecutor opposed the request. The trial court denied Carrera's request because there was "a void of evidence" of recklessness.

### 2. Law

"'""[I]t is the 'court's duty to instruct the jury not only on the crime with which the defendant is charged, but also on any lesser offense that is both included in the

11

offense charged *and shown by the evidence to have been committed.*' [Citation.]"
[Citations.]' [Citation.] 'Speculation is an insufficient basis upon which to require the
giving of an instruction on a lesser offense.' [Citation.] '"[T]he existence of '*any*
evidence, no matter how weak' will not justify instructions on a lesser included offense
. . . .' [Citation.] Rather, substantial evidence must exist to allow a reasonable jury to
find that the defendant is guilty of a lesser but not the greater offense. [Citation.]
'"""Substantial evidence is evidence sufficient to 'deserve consideration by the jury,' that
is, evidence that a reasonable jury could find persuasive."'" [Citation.]' [Citation.]"
(*People v. Westerfield* (2019) 6 Cal.5th 632, 717.)

"Unlawfully causing a fire is a lesser included offense of arson." (*People v.
Schwartz* (1992) 2 Cal.App.4th 1319, 1324.) The difference between arson and
unlawfully causing a fire is one of intent. (*People v. Hooper* (1986) 181 Cal.App.3d
1174, 1181, disapproved on other grounds in *People v. Barton* (1995) 12 Cal.4th 186.) A
person commits arson of property when he *willfully* and maliciously sets fire to or burns
or causes to be burned the property. (§ 451, subd. (d).) Arson is a general intent crime
that requires a person to have the general intent to do the act, i.e., start the fire, that
causes the harm. (*People v. Atkins* (2001) 25 Cal.4th 76, 84, 86, 89.) A person commits
the crime of unlawfully causing a fire when he *recklessly* sets fire to or burns or causes to
be burned, among other things, property. (§ 452, subd. (b).) We review the trial court's
refusal to instruct on a lesser included offense de novo. (*People v. Nieves* (2021)
11 Cal.5th 404, 463.)

*3. Analysis*

Here, the record includes no evidence the jury could deservedly consider to
convict Carrera of recklessly starting the fire. There was nothing suggesting the offense
was anything less than arson. The evidence demonstrated Carrera admitted he used a
lighter to start the fire in the truck's bed. This was a deliberate act. There was no
evidence Carrera started the fire through reckless or unintentional conduct, such as

12

carelessly discarding a lit cigarette in the presence of combustible materials or emptying a trash can containing smoldering embers. Thus, the trial court did not err by refusing to instruct the jury on the lesser included offense of unlawfully starting a fire.

Carrera claims he could have started the fire to "overcome the witchcraft." This is speculative. He also claims "recklessness cannot be ruled out." That is not the test. Contrary to Carrera's claim, the jury did not have to speculate about his intent. Carrera admitted he used the lighter to start the fire.

Carrera relies on *People v. Schwartz* (1992) 2 Cal.App.4th 1319 (*Schwartz*), to support his claim the trial court erred. *Schwartz* is inapposite. In that case, the evidence demonstrated defendant intentionally set fire to numerous car frames inside a repair business because he was angry that work had not been completed on his car. (*Id.* at p. 1322.) A flame from a vehicle burned the structure's loft and roof. (*Id.* at pp. 1322-1323.) The appellate court reversed his arson conviction due to a failure to instruct on the offense of unlawfully causing a fire. (*Id*. at p. 1325.) It determined instruction on this offense was required because reasonable inferences drawn from the evidence supported a conclusion that he only intended to set fire to the cars. (*Ibid*.)

Here, unlike *Schwartz*, Carrera set fire to the truck, but the fire did not spread to other property. The evidence established Carrera used a lighter to set the truck on fire. The jury could not reasonably infer from this evidence anything other than he intended to set the truck on fire.

In supplemental briefing, Carrera asserts the trial court's refusal to instruct on the lesser included offense denied him the right to present a complete defense. Again, we disagree.

"When the defense requests the instruction, the refusal to instruct on a lesser included offense may also violate the federal constitution's requirement that the courts afford every criminal defendant '"a meaningful opportunity to present a complete defense."' [Citations.] As part of this right, a defendant is '"entitled to adequate

13

instructions on the defense theory of the case" *if supported by the law and evidence* [citation] and "'has a constitutional right to have the jury determine every material issue presented by the evidence . . .'" [citation].' [Citations.]" (*People v. Vasquez* (2018) 30 Cal.App.5th 786, 792-793, italics added.)

Carrera relies on his trial counsel's closing argument to assert the case turned on whether he had the "malicious intent" to commit arson. But again, the requested instruction was not supported by the evidence. And the refusal to instruct on an unsupported theory does not prevent a defendant from presenting a complete defense. The trial court did not deny Carrera his right to present a complete defense. (*People v. Nelson* (2016) 1 Cal.5th 513, 540-541)

## DISPOSITION

The judgment is affirmed.

O'LEARY, P. J.

WE CONCUR:

MOORE, J.

GOETHALS, J.

14